UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

STEVEN SPAVONE,

                           Plaintiff,

        -vs-

Mr. BRIAN FISCHER, Commissioner (DOCS), Mr. KENNETH PEARLMAN, Deputy Commissioner Program Services, Ms. JEAN KING, Deputy Superintendent of Programs – Woodbourne C.F., and Mr. NICK CHALK, Supervising Senior Counselor – Woodbourne C.F.,

                           Defendants.

------------------------------------------------------------

10 Civ. 9427 (RJH) (THK)

**MEMORANDUM OPINION AND ORDER**

Richard J. Holwell, District Judge:

    *Pro se* plaintiff Steven Spavone brings this action alleging that defendants violated the Civil Rights Act, 42 U.S.C. § 1983 ("§ 1983") by denying his application for a limited credit time allowance ("LCTA") while plaintiff was in prison and seeks monetary damages against defendants in their official and individual capacities.  Specifically, plaintiff seeks monetary damages for the alleged deprivation of his liberty interest in violation of his constitutional right to due process under the Fourteenth Amendment, the LCTA denial's exacerbating effect on his preexisting mental health condition, future medical costs, and loss of consortium.  Defendants' motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure is unopposed.  For the reasons set forth below, defendants' motion is GRANTED in its entirety and plaintiff's claims are dismissed without prejudice.  Plaintiff is given leave to amend his complaint.

## BACKGROUND

Under N.Y. Corr. Law § 803-b, a LCTA allows eligible inmates to qualify for conditional release or parole eligibility six months earlier than they would have been otherwise.  *See* N.Y. Corr. Law §§ 803-b(1)(b)(ii)(A) and 803-b(1)(b)(ii)(B).  N.Y. Corr. Law § 803-b(2) sets out the eligibility criteria for a LCTA, one of which is the inmate's successful completion of one or more "significant programmatic accomplishments", including but not limited to the inmate's successful participation "as an inmate program associate for no less than two years".  *See* N.Y. Corr. Law § 803-b(1)(c)(iii).  In May 2010, plaintiff's application for a limited credit time allowance ("LCTA") pursuant to N.Y. Correction Law § 803-b was allegedly denied at the facility level by defendants King and Chalk while he was incarcerated at the Woodbourne Correctional Facility.  (Compl. 2 and Ex. A.)   Plaintiff claims that he appealed the denial to defendant Fisher, the Commissioner of the Department of Correctional Services (DOCS) at the time, who designated defendant Pearlman to respond.  Defendant Pearlman allegedly upheld the denial on July 29, 2010.  (Compl. 2.)  Defendants Chalk and Fisher are also named defendants in a separate litigation filed by plaintiff and pending before this Court,[1] and defendant Chalk is alleged to have "on numerous occasions, with the conspiratorial assistance of Defendant King, retaliated against" the plaintiff.  Plaintiff allege that the denials of his LCTA application and appeal were made in retaliation for his previous complaint.  (Compl. 3.)

Plaintiff claims that at the time of the underlying action, he had held a position of inmate program associate for over two years and was therefore entitled to a LCTA under N.Y. Corr. Law § 803-b.  He further alleges that his entitlement to a LCTA is a constitutional right under the Fourteenth Amendment rather than a discretionary privilege, and that the denial of his LCTA application deprived him of his liberty interest in violation of the Fourteenth Amendment.

---

[1] *See Spavone v. New York State Dept. of Correctional Services*, No. 09 Civ. 969 (S.D.N.Y. filed Feb. 4, 2009).

Additionally, the LCTA denial supposedly exacerbated plaintiff's preexisting condition of post traumatic stress disorder by depriving him of "effective, essential and required therapies" as well as medical treatment that he could not receive while in incarceration.  (Compl. 4.)  Lastly, plaintiff claims a loss of consortium because he "will now and in the future require medications, which hinder and interfere, through side effects, with the personal and intimate relationship between husband and wife".  (Compl. 6.)

## DISCUSSION

### I.     Standard of Review

When ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) or failure to state a claim under Rule 12(b)(6), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.  *See Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); *Bolt Elec. Inc. v. City of New York*, 53 F.3d 465, 470 (2d Cir. 1995).  "A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks and citations omitted).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' . . . [T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 544-45 (2007)). "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can

3

provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1940.  The Supreme Court has set out the following pleading standards for overcoming a motion to dismiss in *Iqbal*:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570) (internal citations omitted).

For purposes of a motion to dismiss, the Court deems "a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" and "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit". *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted).  Allegations in a complaint that are contradicted by documents incorporated therein need not be accepted as true by the court. *Barnum v. Millbrook Care Ltd.*, 850 F.Supp. 1227, 1232-33 (S.D.N.Y. 1994).

## II. The Eleventh Amendment Bars Claims Against Defendants in Their Official Capacities

Plaintiff claims that defendants "in their official and individual capacities" under the color of state law violated his right to due process by depriving him of his liberty interest in the LCTA. (Compl. 2.)  In a § 1983 action, a suit for damages against a state official in his official capacity is deemed to be a suit against the state, thereby entitling the official to invoke the sovereign immunity reserved for states under the Eleventh Amendment. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993).  In the absence of consent or congressional

abrogation of the state's sovereign immunity, the state as well as its agencies and departments are immune under the Eleventh Amendment from suits brought in federal court by its citizens. *Coll. Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 670 (1999).  A state's immunity under the Eleventh Amendment may be waived by the state's consent to suit against it in federal court or by congressional abrogation, but such state consent and congressional intent to abrogate must be unequivocally expressed.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).  Congress has not expressly stated any intent to override state sovereign immunity for § 1983 claims, *see Quern v. Jordan,* 440 U.S. 332, 343 (1979), and neither has the state of New York consented to suits in federal court, *see Gross v. New York*, 428 Fed.Appx. 52, 53 (2d Cir. 2011) (noting that the state of New York has waived its immunity by consenting only to being sued in the New York Court of Claims but not in federal court).  Accordingly, plaintiff's § 1983 claim against defendants in their official capacities is dismissed.

### III. Denial of Plaintiff's LCTA Application Does Not Violate His Right to Due Process under the Fourteenth Amendment

A convicted person has no constitutional right in conditional release from prison or parole prior to the expiration of a valid sentence.  *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 422 U.S. 1, 7 (1979); *Barna v. Travis,* 239 F.3d 169, 171 (2d Cir.2001).  The Second Circuit has held that while "inmates have a liberty interest in good time credit they have *already* earned," they have no such interest "in the opportunity to earn good time credit where . . . prison officials have *discretion* to determine whether an inmate or class of inmates is eligible to earn good time credit."  *Abed v. Armstrong*, 209 F.3d 63, 66-67 (2d Cir. 2000) (emphasis added) (citations omitted); *see Lighthall v. Vadlamudi,* No. 9:04-CV-0721, 2006 WL 721568, at *15

(N.D.N.Y. Mar. 17, 2006) (the state of New York has not created a protected liberty interest in merit time or participation in a program that has implications on good time credit); *Scarola v. Goord,* 698 N.Y.S.2d 60, 62 (3d Dep't 1999) (enactment of the merit time legislation N.Y. Corr. Law § 803 did not create a "constitutionally protected liberty interest" and "[p]articipation in the merit time allowance program is a privilege, not a right").

The LCTA is essentially a type of merit time,[2] and therefore plaintiff has no constitutionally protected liberty interest to it. N.Y. Corr. Law § 803-b explicitly states that no inmate has the right to demand a LCTA, and that the commissioner "*may* revoke at any time such credit for any disciplinary infraction committed by the inmate or for failure to continue to participate successfully in any assigned work and treatment program after the certificate of earned eligibility has been awarded." N.Y. Corr. Law § 803-b (3) (emphasis added). Accordingly, plaintiff's claim of liberty interest deprivation under the Fourteen Amendment is dismissed.

### IV.   The Retaliation Claim Is Dismissed for Being Insufficiently Pled

"Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike", *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and citations omitted), and "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002). To survive a motion to dismiss, a prisoner's retaliation claim must be "supported by specific and detailed factual allegations" and not stated "in wholly conclusory terms." *Friedl v. City of New York,* 210 F.3d 79, 85-86 (2d Cir.2000) (quoting *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983)).

---

[2] *See* Richard A. Greenberg, 6 N.Y. Practice, Criminal Law § 3:3 (Apr. 2011) (A LCTA "may be earned by certain inmates who are generally ineligible to earn the merit time credit authorized by N.Y. Correct. Law § 803(1)(d).").

6

To prevail on a First Amendment retaliation claim under § 1983, plaintiff must establish the following three components with non-conclusory allegations: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech or conduct and the adverse action. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citations omitted). In other words, "[plaintiff] bears the burden of showing, first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted). Once plaintiff makes these showings, defendants can avoid liability by demonstrating that they would have taken the same adverse actions even if plaintiff had never engaged in the protected conduct. *Id.* Lastly, "even if the plaintiff shows that the defendant was motivated at least in part by retaliatory animus and the defendant *fails* to prove that, absent that retaliatory animus, he would have taken the same action, the plaintiff must still demonstrate that the causal connection between the defendant's action and the plaintiff's injury is sufficiently direct." *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998) (emphasis added).

There is no dispute that plaintiff's earlier lawsuit against defendants Chalk and Fischer was protected conduct, *see Espinal v. Goord*, 558 F.3d 119, 128-29 (2d Cir. 2009), so at issue are only the last two elements of a retaliation claim – namely (2) whether defendants King, Chalk, and Fischer's involvements, if any, in the LCTA denial at the facility level and the subsequent upholding of that denial on administrative appeal constituted adverse actions; and (3) if so, whether there was a causal connection between plaintiff's earlier lawsuit and said adverse actions. Plaintiff's retaliation claim against defendant King, supported solely by a one-sentence allegation in the complaint that King provided "conspiratorial assistance" to defendant Chalk "on

7

numerous occasions" (Compl. 3), is dismissed for being wholly conclusory. *See Flaherty*, 713 F.2d at 13 ("[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."). King was not a party in plaintiff's earlier lawsuit, so even if her denial of plaintiff's LCTA application can constitute an adverse action, plaintiff has failed to demonstrate that his earlier lawsuit was a "substantial and motivating factor" for King's action, or that any causal connection existed between plaintiff's earlier lawsuit against different defendants and King's denial of plaintiff's LCTA application.

As for defendants Chalk and Fischer, the only remaining defendants in plaintiff's retaliation claim, it is not clear from the pleadings what personal involvement on their part, if any, could have constituted adverse actions. When money damages are sought under § 1983, a defendant's personal involvement in alleged deprivations of plaintiff's right is a prerequisite. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994). Plaintiff claims that his LCTA application was denied by defendants Chalk and King on May 26, 2010 (Compl. 2), but the corresponding notification of LCTA determination from the Department of Correctional Services to plaintiff (Compl. Ex. A) only bears King's signature and does not indicate Chalk's personal involvement in anyway.

Defendant Fischer's only alleged connection to plaintiff's LCTA application process was that he received plaintiff's appeal and designated defendant Pearlman to respond to this appeal (Compl. 2; Compl. Ex. "Administrative Appeal"). In a § 1983 action, a defendant in his supervisory role cannot be held liable solely under the general doctrine of *respondeat superior* absent some showing of personal responsibility, *Dunn v. Carrier*, 137 Fed.Appx. 387, 389 (2d Cir. 2005). A supervisory defendant's personal involvement can be established with one of the following types of evidence:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[3]

The receipt of a prisoner's letter of grievance by a DOCS Commissioner who delegates to other prison officials the task of responding to such complaints is insufficient to establish the Commissioner's personal involvement.  *See, e.g., Hernandez v. Goord*, 312 F.Supp.2d 537, 547 n.6 (S.D.N.Y. 2004); *Amaker v. Goord,* No. 98 Civ. 3634, 2002 WL 523371, *16 (S.D.N.Y. Mar.29, 2002); *Greenwaldt v. Coughlin,* No. 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. April 19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violation.")

Finally, plaintiff fails to establish the third element of a retaliation claim, namely that there was a sufficiently direct causal connection between the lawsuit he filed previously and the LCTA denial or the upholding of that denial on appeal.  The Second Circuit has found that a causal connection may be established by the temporal proximity between an inmate's lawsuit and an adverse action, evidence of the inmate's prior good behavior, and vindication in a proceeding arising from the alleged retaliation.  *See Colon*, 58 F.3d at 873; *Gayle v. Gonyea,* 313 F.3d 677,

---

[3] Post-*Iqbal* opinions issued by this Court have questioned whether all five types of evidence establishing a supervisory defendant's personal involvement as outlined in *Colon* are still relevant.  *See, e.g*., *Young v. State of N.Y. Office of Mental Retardation and Developmental Disabilities*, 649 F.Supp.2d 282, 293-94 (S.D.N.Y. 2009) ("Precisely what remains of the Second Circuit rule [set out in *Colon*] in light of *Iqbal* is not entirely clear."); *Bellamy v. Mount Vernon Hosp*., No. 07 Civ. 1801(SAS), 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third *Colon* categories pass *Iqbal'* s muster—a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred.").  Under either the *Colon* or post-*Iqbal* framework, **p**laintiff fails to demonstrate defendant Fischer's personal involvement in any retaliatory action against plaintiff.

683 (2d Cir. 2002). The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action", and this allows the Court "to exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Espinal*, 558 F.3d at 129 (internal quotation marks and citations omitted).

Plaintiff's prior lawsuit against Chalk and Fischer was filed on February 4, 2009, and the denial of plaintiff's LCTA application and alleged subsequent upholding of that denial on administrative appeal happened on May 26, 2010 and July 29, 2010 respectively. More than fifteen months had elapsed between the protected conduct and the first allegedly adverse action, which is not likely to establish, through temporal proximity, the required element of causal connection in a retaliation claim. *Compare Figueroa v. Weisenfreund*, 255 Fed.Appx. 595, 597 (2d Cir. 2007) (fifteen months between employee's complaints about employer and employer's termination of employment did not establish the require element of causal connection in a prima facie § 1983 retaliation claim) *and Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74 (2001) (employer's adverse action taken twenty months after employee's filing of a complaint with the EEOC suggests "no causality at all" in a retaliation claim), *with Espinal*, 558 F.3d at 129 (passage of six months between dismissal of prisoner's lawsuit and alleged act of retaliation by prison officers, one of whom was a defendant in the prior lawsuit, sufficiently supports an inference of causal connection in a First Amendment retaliation claim). Additionally, there has been no subsequent proceeding vindicating the denial of plaintiff's LCTA application, and plaintiff does not make any claims of prior good behavior to support the inference that the LCTA denial and the appeal upholding the denial were retaliatory acts. Even if the inmate progress

reports showing above average marks and appended to the complaint (Compl. Ex. F.) can be construed as evidence of plaintiff's prior good behavior, the totality of circumstances −given the lack of vindication or temporal proximity between plaintiff's prior lawsuit and defendants' actions −fails to plausibly allege the causal connection that is essential to a retaliation claim.

> V.   **Claims of Deprivation of Medical Treatment and Loss of Consortium Are Not Actionable**

"To state a claim under § 1983 for deprivation of medical treatment in violation of the Eighth Amendment, [a *pro se* prisoner plaintiff] must show that the defendants acted with 'deliberate indifference to serious medical needs.'" *Sauls v. New York City Dep't of Corrections*, 151 Fed.Appx. 38, 39 (2d Cir. 2005) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). "Allegations of mere negligence are not sufficient." *Sauls*, 151 Fed.Appx. at 39. "The deliberate indifference standard embodies both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the charged official must act with a sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (internal quotation marks and citations omitted). "This requires that the prisoner prove that the charged official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir.2005) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). Plaintiff fails to allege that any of the defendants was aware of his medical conditions, let alone acted with "deliberate indifference" to these conditions. Lastly, "§ 1983 does not support derivative claims for loss of consortium." *Wahhab v. City of New York,* 386 F.Supp.2d 277, 292 (S.D.N.Y. 2005) (citation omitted); *see Harrison v. Harlem Hosp.,* No. 05 Civ. 8271(WHP),

2007 WL 2822231, at *4 (S.D.N.Y. Sept. 28, 2007) ("While the Second Circuit has not addressed whether a plaintiff may bring a loss of consortium claim pursuant to federal civil rights statutes, the weight of authority holds they may not.") (citations to numerous other Circuit court decisions omitted).

## CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss **[19]** is GRANTED in its entirety and plaintiff's claims are dismissed without prejudice. Plaintiff is given leave to amend his complaint.

SO ORDERED.

Dated: New York, New York
       January 3**1**, 2012

                                        Richard J. Holwell
                                        United States District Judge